UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAUN WHITT,

          Petitioner,

v.                                 Case No. 3:20-cv-774-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Shaun Whitt, an inmate of the Florida penal system, initiated this action through counsel on July 13, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) with a memorandum of law (Memorandum; Doc. 7).[1] In the Petition, Whitt challenges a 2014 state court (Flagler County, Florida) judgment of conviction for sexual battery on a person less than twelve years of age and sexual battery on a minor between twelve and eighteen years of age by a person in a position of familial or custodial authority. He raises five grounds for relief. See Petition at 5-12. Respondents submitted a memorandum in

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

opposition to the Petition. See Response (Doc. 11). They also submitted exhibits. See Doc. 12-1. Whitt filed a brief in reply. See Reply (Doc. 13). This action is ripe for review.

## II. Relevant Procedural History

On September 15, 2014, the State of Florida charged Whitt by second amended information with sexual battery on a person less than twelve years of age (count one) and sexual battery on a minor between twelve and eighteen years of age by a person in a position of familial or custodial authority (count two). Doc. 12-1 at 54. At the conclusion of a trial, on September 17, 2014, the jury found Whitt guilty of counts one and two as charged. Id. at 75-76. On that same day, the trial court sentenced Whitt to a term of life imprisonment as to count one and a concurrent thirty-year term of imprisonment as to count two. Id. at 92-98. The trial court also designated Whitt a sexual predator. Id. at 115.

On direct appeal, Whitt, with the benefit of counsel, filed an initial brief, arguing the trial court erred when it: excluded three defense witnesses who proffered testimony on their observations of the victim's demeanor at the time of the offenses (ground one); restricted cross-examination of Detective Elizabeth Conrad about the adequacy of her investigation (ground two); limited the testimony of a defense witness who was offered to impeach the

victim's testimony and present evidence of sexual abuse by someone other than the accused (ground three); and deprived Whitt through evidentiary rulings of his right to present a defense and confront witnesses (ground four). Id. at 599-635. The State filed an answer brief. Id. at 637-71. Whitt filed a reply brief. Id. at 673-92. Florida's Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Whitt's conviction and sentence without a written opinion on February 9, 2016, id. at 694, and issued the mandate on March 4, 2016, id. at 696.

On April 6, 2017, Whitt, with the assistance of counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 707-27. In the Rule 3.850 Motion, Whitt alleged counsel was ineffective when she: failed to call as witnesses the victim's mother and teacher, as well as a Department of Children and Families case agent (ground one); failed to retain or call a child psychologist to testify on typical behaviors of sexually abused children (ground two); misadvised Whitt that he should not testify at trial (ground three); and failed to investigate and obtain Whitt's employment records (ground four).[2] Id. Following an evidentiary hearing, on March 5, 2019, the postconviction court summarily denied relief on all grounds. Id. at 834-36. The Fifth DCA per curiam affirmed the denial

_____

[2] On April 17, 2017, postconviction counsel filed a Rule 3.850 Motion containing identical grounds but adding Whitt's oath and signature. Doc. 12-1 at 728-48

of relief without a written opinion on May 26, 2020, id. at 1036, and issued the mandate on June 19, 2020, id. at 1038.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Whitt's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

4

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be

rebutted by showing that the higher state court's adjudication most likely

relied on different grounds than the lower state court's reasoned decision,

such as persuasive alternative grounds that were briefed or argued to the

higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d)

bars relitigation of the claim unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or

(2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope

of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v.
> Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d
> 389 (2000), § 2254(d)(1) consists of two distinct
> clauses: a "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause allows
> for relief only "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's

8

representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

9

we expect will often be so, that course should be followed." <u>Strickland</u>, 466

U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." <u>Id.</u> (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the <u>Strickland</u> standard was
> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied <u>Strickland</u>'s deferential standard,"
> then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.

Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference — this one to a state court's decision — when we

are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Whitt alleges the trial court erred when it excluded testimony from his father, Thomas Losoncy, that someone else sexually abused the victim, AMR. Petition at 5. According to Whitt, counsel sought to admit testimony from Losoncy that AMR's mother disclosed the past abuse to him; however, the trial court excluded the testimony as irrelevant. <u>Id.</u> He argues that Losoncy's testimony was relevant because a nurse practitioner testified AMR had injuries to her hymen "consistent with both recent abuse and with 'old . . . farther away penile penetration.'" <u>Id.</u> Whitt raised a substantially similar argument on direct appeal, Doc. 12-1 at 626-31; the State filed an answer brief, <u>id.</u> at 666-68; and the Fifth DCA per curiam affirmed Whitt's convictions without a written opinion, <u>id.</u> at 694.

Respondents argue that Whitt failed to exhaust state remedies as to this claim, and, as such, the claim is procedurally defaulted. Response at 9. According to Respondents, Whitt argues the testimony's admissibility

11

pursuant to Florida's rape shield statute[3] in his Petition but did not make the same argument in state court. Id. ("The rape shield law was not referenced or cited in the initial brief."). Respondents also contend Whitt failed to alert the state court to the federal nature of his claim. Id. They therefore maintain the claim is procedurally barred from federal habeas review. Id.

Upon review of the record, the Court concludes that Whitt has exhausted this claim. In his initial brief on direct appeal, Whitt argued that the trial court excluded admissible and relevant evidence. Doc. 12-1 at 630-31. He specifically noted Florida's rape shield statute "does not appear to categorically exclude evidence of the victim's history of non-consensual sex with someone other than the accused." Doc. 12-1 at 629. Whitt argued that federal courts have evaluated "a rule similar to Florida's rape-shield law, as it affects the defendant's right to present evidence in his defense" and found that evidence of a victim's history of non-consensual sex is not per se inadmissible under that rule. Id. (emphasis added). His argument addressing federal law alerted the state court to the federal nature of the claim. Accordingly, the Court finds Whitt properly exhausted the claim in Ground One.

---

[3] Florida's rape shield statute prohibits the introduction into evidence of "specific instances of prior consensual sexual activity between the victim and any person other than the offender" with some exceptions. See Fla. Stat. § 794.022(2).

In its appellate brief, the State addressed the claim on the merits, Doc. 12-1 at 666-68; therefore, the appellate court may have affirmed Whitt's conviction based on the argument presented by the State. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Whitt is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Whitt's claim is without merit. The record reflects that counsel proffered testimony from Losoncy at trial about the prior molestation of AMR:

> Q    Okay. Do you know anything about AMR's background personally?
>
> A    Just what her mother told me. She told me that, supposedly, AMR had a problem in earlier years. Because, I guess, Brandy [AMR's mother] had her when she was young. And she lived with her mother. And, I guess, there was supposed to have been an incident with a – I guess, it's the stepfather.

Q      Okay.

A      I kind of found all this out. Because she has
       this hatred for her mother. And I just kind of
       confronted her and wanted to know, why do you
       hate your mother so much.

Q      Do you know – Have you ever seen AMR
       around those people?

A      No. No. I mean, her – She's never seen them.
       Once they – I guess, her mother, Brandy, broke
       ties with them years – quite a few years ago.
       And I know that she mentioned a couple times
       where – Because they live in St. Augustine.
       And her mother got close. And I know she was
       just saying if she would have approached them,
       that it probably wouldn't have been a good
       deal. Because she just hated her mother so
       much, Brandy does.

Q      Do you know if AMR was aware of that?

A      Yes.

Q      How do you know AMR was aware of that?

A      Because she says it – She will tell you in front
       of the kids.

Q      She don't like her mother?

A      She just said she don't like her mother. Now, I
       have never heard her – She kind of gave me
       sort of the details of – Supposedly, he was doing
       something to her. But she never mentioned it
       around AMR.

Q      Okay.

14

> A    You know, she just said she didn't like her mother. And you're not ever going to see them, and that's it.

Doc. 12-1 at 379-81. The prosecutor argued Losoncy's testimony about the prior molestation was irrelevant "as to whether or not a fact or dispute [was] more or less likely to have happened." Id. at 385. Further, the prosecutor contended that Losoncy only knew about the incident based on hearsay from AMR's mother. Id. The defense seemingly made no argument about its relevancy. Id. at 389-94. The state court excluded the testimony about the prior molestation, finding the testimony had no relevance "to the case at hand." Id. at 400.

Although alleged state law errors generally do not constitute grounds for federal habeas relief, "a habeas court may review a state court's evidentiary rulings in order to determine whether those rulings violated the petitioner's right to due process by depriving him of a fundamentally fair trial." Copper v. Wise, 426 F. App'x 689, 692 (11th Cir. 2011) (citing Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)).[4] The Eleventh Circuit has explained:

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Indeed, in a habeas corpus action brought by a state prisoner, our authority is "severely restricted" in the review of state evidentiary rulings. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir.1983) (per curiam); see Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." Lisenba,[5] 314 U.S. at 228, 62 S.Ct. 280; see Estelle, 502 U.S. at 75, 112 S.Ct. 475 (holding that habeas relief was not warranted because neither the introduction of the challenged evidence, nor the jury instruction as to its use, "so infused the trial with unfairness as to deny due process of law"); Bryson v. Alabama, 634 F.2d 862, 864–65 (5th Cir. Unit B Jan.1981)[] ("A violation of state evidentiary rules will not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of such a magnitude as to constitute a denial of 'fundamental fairness.' "); cf. Chambers,[6] 410 U.S. at 302, 93 S.Ct. 1038 (concluding that the exclusion of "critical evidence" denied the defendant "a trial in accord with traditional and fundamental standards of due process").

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014) (footnote omitted).

Here, Whitt has failed to make such a showing. He contends that evidence of the prior molestation is relevant because it could provide an

---

[5] Lisenba v. California, 314 U.S. 219 (1941).
[6] Chambers v. Mississippi, 410 U.S. 284 (1973).

explanation for injuries to AMR's hymen, <u>see</u> Petition at 5; however, this argument is unavailing. At trial, Nurse Susan Williams testified that when she examined AMR, she found "healed" injuries and an acute, or unhealed, injury to AMR's hymen. <u>Id.</u> at 240-42. She noted that these injuries heal quickly on children, and the healing process usually begins 24 to 36 hours after the child sustains the injury. <u>Id.</u> at 241. According to Nurse Williams, she could not age the acute injury, but determined that "it happened recently." <u>Id.</u> at 242. Therefore, while Losoncy's testimony may have provided an alternative explanation for the healed injuries to AMR's hymen, it would not have explained the recent injury. Losoncy testified on proffer that the prior molestation occurred when AMR was younger, and AMR's mother "broke ties with [her mother and stepfather] . . . quite a few years ago." <u>Id.</u> at 380. Whitt neither alleges nor presents evidence that the stepfather had access to AMR during the offenses or still had contact with the family. As such, the proffered evidence of AMR's prior molestation was not relevant to whether Whitt sexually abused AMR between December 2010 and January 2012.

In addition, the exclusion of Losoncy's testimony about the prior molestation did not "so infuse the trial with unfairness as to deny [Whitt] due process of law." <u>Lisenba v. California</u>, 314 U.S. 219, 228 (1941). "To render a

state-court proceeding fundamentally unfair, the excluded evidence must be 'material in the sense of a crucial, critical, highly significant factor.'" Taylor, 760 F.3d at 1296 (quoting Boykins v. Wainwright, 737 F.2d 1539, 1544 (11th Cir. 1984)). Here, the testimony would not have materially supported Whitt's defense. At trial, Whitt argued that AMR lied about Whitt's alleged abuse. Doc. 12-1 at 544-64. Hearsay testimony from Whitt's father that someone else had abused AMR "quite a few years ago" does not support this theory. Further, Whitt was given the opportunity to present other critical evidence in support of his defense. Dr. Norman Hoffman testified about the reliability of children's memories and proper procedures for conducting forensic interviews of children. Id. at 454-65. The defense also called Losoncy as a witness to refute AMR's allegation that Whitt did not work, so he had access to AMR while her mother worked. Id. at 485-87. As such, Whitt does not demonstrate that the exclusion of testimony about AMR's prior molestation rendered his trial fundamentally unfair. Accordingly, he is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

Next, Whitt contends counsel was ineffective when she misadvised him about his right to testify. Petition at 6. According to Whitt, counsel stated "he was not going to testify in his own defense." Id. He contends that based on his

18

conversations with counsel, he did not feel that she would permit him to testify at trial. Id. Whitt alleges that his testimony would have provided an explanation for the presence of his DNA on the carpet in AMR's bedroom. Id. He asserts that he watched pornographic movies and masturbated in AMR's bedroom because it was the only room in the house with a television and a lock. Id.

Whitt raised a substantially similar claim as ground three of his Rule 3.850 Motion. Doc. 12-1 at 742-44. Following an evidentiary hearing, the postconviction court denied relief, stating in pertinent part:

> The Defendant claims that his defense counsel refused to present his testimony at trial. At the hearing, the Defendant admitted that he did indeed discuss the "pro[]s and cons" of testifying with his trial counsel before and during trial. Ms. Nunnally [trial counsel] testified that she discussed the issue of whether to testify or not as well as the benefits and disadvantages to testifying with the Defendant many times and, after careful consideration, the Defendant himself decided that he would not testify. Although Ms. Nunnally did in fact agree with his decision, there is no evidence to support that Ms. Nunnally told the Defendant that he could not testify.
>
> This Court also reviewed the trial court's extensive colloquy with the Defendant regarding his decision on whether to testify. Based on this evidence, it is clear that the decision to testify was the Defendant's decision and Ms. Nunnally was not deficient in this regard.

Even if Ms. Nunnally had been deficient, however, this Court finds that the Defendant was not prejudiced by the Defendant's failure to testify. The facts elicited at trial were that the child victim was raped by the Defendant in the child's bedroom. She even showed detectives where in the room the rape occurred. Moreover, the Defendant's semen was found precisely where the child victim said it would be. Defendant claims that he masturbated in the child's room and that's why his semen was found in the room. However, the Defendant could offer no explanation for how the child victim would know if and precisely where the Defendant masturbated in her room. If the Defendant had testified and not been able to explain how the victim knew his semen would be found in the room, his credibility would have been destroyed and he would have been subjected to very damaging cross examination by the State which would have only weakened his defense further. This Court finds that the defense has failed to establish any prejudice on this ground.

Id. at 835 (emphasis in original). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Id. at 1036.

To the extent that the Fifth DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law,

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whitt is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Whitt's ineffectiveness claim is without merit. The postconviction court made a factual determination when it chose to credit the testimony of Whitt's trial counsel. See Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."). Therefore, the Court must presume the finding is correct unless Whitt can rebut the presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Here, Whitt has not rebutted the postconviction court's credibility finding by clear and convincing evidence. The postconviction court's factual finding refutes the claim regarding counsel's alleged deficiencies in advising Whitt that he could not testify at trial. Given the postconviction court's credibility determination, Whitt's claim is wholly unsupported, and therefore fails.

To the extent Whitt asserts counsel misadvised him not to testify at trial, the Court further finds counsel did not perform deficiently. At the evidentiary hearing, counsel testified that Whitt told her that he would masturbate in AMR's bedroom because he could see from the window when

his wife arrived home and he could stop. Doc. 12-1 at 907. Counsel noted that she strongly advised him against testifying because his explanation likely would not withstand cross-examination. Id. at 907-08. The State would cross-examine him about why AMR could identify the location of his DNA in her bedroom and why he masturbated in AMR's bedroom while she was inside the house. Id. at 907, 910. Counsel testified Whitt never provided her with a rational explanation as to how AMR knew law enforcement could find his DNA in front of the television in her bedroom. Id. at 908. She expressed concern that Whitt was not "savvy enough" to withstand cross-examination. Id. at 909. Counsel further stated that Whitt's explanation would introduce a "creep factor" that would not aid the defense. Id. at 909.

The record supports counsel's reasoning. Detective Elizabeth Conrad testified that they collected carpet samples from the victim's bedroom based on the victim's statement and the use of a blacklight. Id. at 283. In the arrest and booking report, the victim stated Whitt laid her down in front of the television in her bedroom and raped her. Id. at 18. Detective Conrad took a sample of the carpet in front of the television stand. Id. at 268. FDLE analysts identified the presence of semen from Whitt and epithelial cells from AMR on that sample. Id. at 290, 307. Given such evidence, if Whitt had testified at trial, the State would have cross-examined him about how AMR

was able to identify an area in her bedroom where law enforcement found Whitt's DNA. While Whitt suggested to trial counsel that AMR "must have seen [him]," id. at 907, his explanation is unconvincing given Whitt allegedly used AMR's bedroom because the door had an operable lock, id. at 870. In addition, the State charged Whitt with sexual battery of AMR, his stepdaughter. His explanation for why law enforcement found his semen on the carpet in her bedroom could have unsettled the jury and harmed the defense. Given the evidence, Whitt fails to demonstrate "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000); see also Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 567 (11th Cir. 2012) (finding petitioner failed to establish that no competent counsel would have advised him not to testify where the State would have challenged his credibility on cross-examination and the jury would have learned of his prior felony convictions). For these same reasons, Whitt fails to demonstrate prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Two.

### C. Ground Three

As Ground Three, Whitt alleges counsel was ineffective when she failed to investigate and call "Rob" from the Department of Children and Families as a witness. Petition at 8. "At the time that AMR first made her allegations,"

she allegedly told her mother and Rob that "she was 'lying about something big,'" but she never revealed the nature of the lie. Id. Whitt asserts that counsel did not call Rob as a witness because she did not know his surname and could not locate him. Id. According to Whitt, counsel should have further investigated Rob and called him as a witness to testify about AMR's statement. Memorandum at 18-19.

Initially, the Court finds that Whitt's unsubstantiated allegations are facially insufficient to support a claim of ineffective assistance of counsel for failure to call a witness. "Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Having failed to produce such evidence, relief on this claim is due to be denied on the merits.

Nevertheless, even if Whitt presented a facially sufficient claim for relief, it does not have merit. Whitt raised a substantially similar claim as ground one of his Rule 3.850 Motion. Doc. 12-1 at 735-38. The postconviction court held an evidentiary hearing, after which it denied relief:

The Defendant continues to claim that his attorney was ineffective for failing to call the witness "Rob" to testify at trial. This witness is believed to be an investigator affiliated with DCF and was expected to testify that the victim told him that she told a "big lie". But, it is believed that the victim did <u>NOT</u> disclose to the witness what she lied about.

The Court finds that trial counsel, Ms. Regina Nunnally, was not given sufficient and specific information to identify the witness and could not locate this witness despite her reasonable efforts to do so. She was not deficient in failing to locate the witness with the limited information available to her at that time. This Court further finds that even if Ms. Nunnally were deficient in failing to locate "Rob", the Defendant was not prejudiced. The child victim was vigorously cross examined regarding the "big lie" and admitted she said that even though she could not remember what she lied about. Additional testimony by Rob would not have changed the victim's testimony and, if anything, would have diminished the effect of the victim's admission on the jury. More importantly, the defense did not establish that failure to locate and call this witness affected the jury's verdict or the outcome of this case.

<u>Id.</u> at 834 (emphasis in original). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. <u>Id.</u> at 1036.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whitt is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of the claim is not entitled to deference, the ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Counsel detailed her efforts to locate Rob during the evidentiary hearing. She explained she had "no specifics about him," including his surname. Doc. 12-1 at 897. While counsel knew Rob interviewed AMR, she noted that he did not work for DCF. Id. at 928-29. Rob worked for an agency that contracts with DCF, but DCF could not provide the agency name or any information about Rob. Id. at 929. AMR and AMR's mother also could not offer identifying information. Id. at 929. According to counsel, the Public Defender's Office investigator never located him despite efforts. Id. at 898. Based on the record, counsel had limited information but pursued all available avenues to identify Rob. Whitt does not identify with any specificity what counsel should have done, but failed to do, to conduct further investigation in this context. On this record, the Court finds counsel conducted a reasonable investigation. As such, counsel did not perform deficiently.

Even assuming arguendo counsel performed deficiently, Whitt has failed to demonstrate prejudice. Counsel cross-examined AMR at trial about the "big lie." Id. at 211-15. AMR testified she never told Rob or her mother what she lied about, and she could not remember what it was. Id. at 211-12. Whitt does not dispute the fact that AMR never revealed the nature of the lie to Rob. Because evidence of the big lie was before the jury, Whitt has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Rob as a witness. Accordingly, the claim in Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Whitt contends counsel was ineffective when she failed to retain or call an expert to testify about the typical behaviors of sexually abused children. Petition at 10. Whitt alleges that while counsel called Dr. Hoffman to testify about children's memories, he did not testify about "how child victims of sexual abuse act or how their behaviors may change after the abuse has allegedly occurred." Id. He argues that if counsel had retained and called an expert to testify on this subject, it "would have provided information that the jury would have used to find that AMR was not being truthful about [Whitt's] alleged actions." Memorandum at 20.

Once again, the Court finds that Whitt's allegations are facially insufficient to support a claim of ineffective assistance of counsel for failure to call a witness. Whitt fails to support his claim with the "actual testimony by the witness or an affidavit." Ashimi, 932 F.2d at 650. Therefore, his ineffectiveness claim relies on nothing more than self-serving speculation. See Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (noting that where a petitioner alleges ineffective assistance of counsel for failure to call a witness, the "prejudice burden is heavy . . . because often allegations of what a witness would have testified to are largely speculative.") (quotation marks and citation omitted); Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 852 (11th Cir. 2016) (finding that ineffective assistance of counsel claim for failure to call an expert witness was speculative and conclusory where petitioner provided no evidence that he had contacted an expert and failed to allege an expert had reviewed the evidence in the case). As such, relief on the claim in Ground Four is due to be denied on the merits.

Nevertheless, even if Whitt presented a facially sufficient claim for relief, it does not have merit. Whitt raised a substantially similar claim as ground two of his Rule 3.850 Motion. Doc. 12-1 at 738-42. Following an evidentiary hearing, the postconviction court denied relief, stating:

> The defense claims that Ms. Nunnally was deficient for not hiring and calling an expert witness

28

to testify that the victim was not telling the truth. But, the Defendant's allegation is misplaced. Ms. Nunnally presented the testimony of an expert, Dr. Hoffman. Dr. Hoffman testified regarding the process used in a CPT interview and why the victim's interview might not be reliable. The alleged victim of a sex crime is generally regarded as a sympathetic witness, particularly so when, like here, the victim is a child. Ms. Nunnally's use of Dr. Hoffman was a creative and effective strategy by which she used Dr. Hoffman to point out deficiencies in the CPT examination of the child victim in order to attack the child's credibility. This Court finds that the defense has failed to establish any prejudice on this ground.

Id. at 835. The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Id. at 1036.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whitt is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of the claim is not entitled to deference, the claim is meritless because the record supports the

29

postconviction court's conclusion. Dr. Hoffman testified at trial about children's memories and the proper procedures for forensic interviews of children. Doc. 12-1 at 454-65. Through Dr. Hoffman's testimony, counsel sought to undermine the credibility of AMR by focusing on the reliability of her memory as opposed to whether she behaved similarly to other sexually abused children. The Court also notes that counsel sought to introduce testimony about AMR's behavior through the testimony of Whitt's niece and sister-in-law. Id. at 342, 354. The state court ultimately excluded the testimony as irrelevant. Id. at 395-97. Whitt does not demonstrate that no competent counsel would have taken the action that his counsel chose to take, especially where the witness testimony that would support the proposed expert's testimony would have come from Whitt's family members. See Chandler, 218 F.3d at 1315. As such, Whitt has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance.

Assuming arguendo counsel performed deficiently, Whitt has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Whitt claims she should have. On this record, Whitt's ineffectiveness claim is without merit because he has

shown neither deficient performance nor resulting prejudice. Accordingly, Whitt is not entitled to federal habeas relief on the claim in Ground Four.

## E. Ground Five

Lastly, Whitt contends counsel was ineffective when she failed to investigate the facts surrounding the offenses. Petition at 11. He specifically alleges that counsel failed to obtain his employment records, which would have refuted the State's timeline of the alleged abuse. Memorandum at 21. According to Whitt, he provided counsel with information about his employment during the relevant time periods, but counsel never obtained any records because his employers did not respond to her requests. Petition at 11. He argues the records would have contradicted AMR's testimony that Whitt was unemployed at the time of the offenses and would have refuted "some of the alleged instances of abuse, particularly if compared with [AMR's mother's] employment records." Memorandum at 22.

Whitt raised a substantially similar claim as ground four of his Rule 3.850 Motion. Doc. 12-1 at 744-46. Following an evidentiary hearing, the postconviction court denied relief, stating in pertinent part:

> The Defendant claims that he had some part-time jobs in the months before the incident and defense was ineffective for not presenting this favorable evidence. The defense did present the testimony of the Defendant's father-in-law to establish that he employed the Defendant part time

but he could not testify about the Defendant's other employment. Further, Ms. Nunnally testified that the defense located 2 possible employers but the employers would not provide records to the defense, despite reasonable efforts to locate these employers and gain their support. It is this Court's findings that Ms. Nunnally was not deficient for failing to find all of the Defendant's employment records in light of these facts and circumstances.

Even if the W-2 data that was presented in the hearing had been available and produced at trial, this Court finds that it would not have made a difference in the outcome of the case. The allegations were that the sexual abuse occurred multiple times over a fourteen-month period when the child victim's mother was not at home and the Defendant and victim were alone in the house. The defense does not dispute that the Defendant and victim were often alone in the home and clearly the evidence of employment would not contradict this critical fact. The employment was not material to any other issue. Accordingly, this Court finds that the defense has failed to establish any prejudice on this ground.

Id. at 836. The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Id. at 1036.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Whitt is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Whitt's ineffectiveness claim is without merit because the record supports the postconviction court's findings. After the evidentiary hearing, the postconviction court made a factual determination when it credited counsel's testimony. See Consalvo, 664 F.3d at 845. In federal habeas review, a state court's factual determination is presumed correct unless the petitioner can rebut the presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Here, Whitt has not rebutted the trial court's credibility finding by clear and convincing evidence. As such, the state court's factual findings which are presumed correct refute the claim regarding counsel's alleged deficiencies in investigating the employment records. Given the trial court's credibility determination, Whitt's claim is unsupported, and therefore fails.

Additionally, Whitt cannot demonstrate resulting prejudice. AMR remembered only one specific date on which an incident occurred, January 25, 2012, but noted that most of the incidents took place between December 2010 and January 2012. Doc. 12-1 at 154, 162, 166-67. Whitt fails to identify

which instances of abuse his employment records would refute. Notably, he only presented W2s from Publix and Remedy Intelligent Staffing at the evidentiary hearing. Such documents do not provide specific dates and times on which Whitt worked. Id. at 901-02. Vague and conclusory assertions about the results of further investigation entitle Whitt to neither an evidentiary hearing nor habeas relief. See San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics.'") (quoting Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006)); Aldrich v. Wainwright, 777 F.2d 630, 637 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."). Accordingly, Whitt is not entitled to federal habeas relief as to Ground Five.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Whitt seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Whitt "must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Whitt appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of April, 2023.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 4/6
c:      Counsel of record

36